IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                 Case No. 12-10139-01-JTM

BERNICE ESPARRA RAMIREZ,

    Defendant.

MEMORANDUM AND ORDER

This matter comes before the court on defendant Bernice Esparra Ramirez's Motion to Suppress (Dkt. No. 18). Ms. Ramirez seeks an order suppressing the methamphetamine found and statements she made after her arrest. The court held a hearing on the matter on September 24, 2012. The court finds that (1) the officer's initial traffic stop of Ms. Ramirez's truck was based on reasonable suspicion; (2) her arrest was properly supported by probable cause; (3) she was given proper *Miranda* warnings; and (4) her statements were made voluntarily after waiving her *Miranda* rights. Accordingly, the court denies Ms. Ramirez's Motion.

**I. Factual Background**

On June 2, 2012, Trooper James McCord of the Kansas Highway Patrol was parked in the median of I-70 watching the road. Trooper McCord clocked the speed of an eastbound 2012 Dodge Ram 1500 at 80 mph in a 75 mph zone. After pulling up beside the truck to check for other

violations and the number of occupants in the vehicle, Trooper McCord moved into the right lane, activated his emergency lights, and stopped the truck for speeding.

The driver of the truck, Bernice Esparra Ramirez, produced a Nevada driver's license and told Trooper McCord she was heading to Wichita to visit her boyfriend for "about a week." Trooper McCord reported that Ms. Ramirez's hands were shaking and she appeared very nervous as she handed him the truck's rental papers and her license. The rental papers revealed that Ms. Ramirez had rented the truck in Las Vegas, from May 31 to June 5. The rental agreement was in English. Trooper McCord found Ms. Ramirez's answer that she would be staying in Wichita for a week suspicious, given that the truck was due back in Nevada in three days.

Trooper McCord returned Ms. Ramirez's paperwork, issued her a written warning, and concluded the stop. After starting back to his car, Trooper McCord returned to Ms. Ramirez's truck. He asked Ms. Ramirez if he could ask her a few more questions, and she agreed to speak with him. When Trooper McCord asked whether she had any drugs, weapons, or large amounts of cash in the truck, Ms. Ramirez denied it. Trooper McCord asked to search the vehicle, and Ms. Ramirez consented. Ms. Ramirez showed an adequate understanding of the conversation they were having, and Trooper McCord had no trouble communicating with her.

In his search, Trooper McCord found nothing in the truck's passenger compartment, around the tires, or under the truck body. Under the hood of the truck, Trooper McCord noticed hand prints on the fan shroud and scuff marks on the fuse box cover in front of the battery. The battery and terminals were "overly scratched up" and the battery terminal nuts had recently been removed. The truck only had 7,000 miles on it, so these markings seemed out of the ordinary. Furthermore, Trooper McCord had received training and periodic intelligence reports from the police community

making him aware that hollowed out batteries were used for drug trafficking. When Trooper McCord removed the battery's vent cap, he noticed it had been glued down and had no water. The vent cap had sheet metal screws holding a plate to the bottom of the cap, preventing access to the inside of the battery.

Trooper McCord then placed Ms. Ramirez under arrest and advised her of her *Miranda* rights. When asked if she understood, Ms. Ramirez answered "Yes sir," and began speaking with Trooper McCord. Trooper McCord drove Ms. Ramirez to an office in his patrol car, while another officer drove the truck to Highway Patrol's Troop D offices for a closer inspection. At the Highway Patrol station, officers removed the vehicle's battery and discovered approximately 3 pounds and 12 ounces of methamphetamine inside a false compartment in the battery.

Task Force Officer Doug Rule arrived and interviewed Ms. Ramirez in English. Trooper Rule did not have any trouble communicating with Ms. Ramirez. Ms. Ramirez said she knew she was hauling drugs but did not know what type. She said she was being paid to take the drugs from Las Vegas to Wichita but did not know how much she was being paid. Ultimately, Ms. Ramirez refused to help with a controlled delivery of the drugs.

**II. Reasonable Suspicion to Stop**

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this

provision. *Whren v. United States*, 517 U.S. 809-10 (1996). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. *Id.* at 810. "A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

In this case, Trooper McCord was sitting stationary on the median of I-70 facing west when he first saw Ms. Ramirez's truck. At some point, Trooper McCord clocked the truck's speed at 80 mph in a 75 mph zone. This alone is sufficient to meet the burden of reasonable suspicion that Ms. Ramirez had violated a traffic law. Trooper McCord's traffic stop was therefore reasonable.

The defendant does not challenge her consent to the search, so this court limits its next inquiry to whether or not there was probable cause for her arrest.

### III. Probable Cause for Arrest

The law clearly requires a warrantless arrest to be based on probable cause. *See Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006). Probable cause to arrest requires a showing that under the totality of the circumstances a reasonable person would believe that an offense has been committed by the person arrested. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008).

Evidence of a hidden compartment can alone give rise to probable cause to search a vehicle for contraband or arrest the driver of the vehicle. *See United States v. Stephenson*, 452 F.3d 1173, 1177–78 (10th Cir. 2006). Whether evidence of a hidden compartment can alone create probable

cause depends on two factors: (1) the likelihood that there really is a hidden compartment and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband. *Id*. The first factor can be met when the police officer has training and experience with hidden compartments. *Id*. at 1177. Furthermore, the Tenth Circuit does not require an officer to verify or confirm conclusively the existence of a hidden compartment before searching or arresting. *See United States v. Jurado-Vallejo*, 380 F.3d 1235, 1239 (10th Cir. 2004).

Regarding this first factor, Trooper McCord has worked as a Kansas State Trooper for over ten years. He specializes in criminal interdiction. He has made hundreds of stops and searches for drug interdiction and has received extensive training in this area. Trooper McCord completed Desert Snow training in Topeka, Kansas, in 2009, where he was trained on concealment of drugs in hidden compartments, including hollowed out batteries. As part of his job, Trooper McCord receives intelligence bulletins to inform him about new interdiction methods; these bulletins have previously referred to the hollowed out battery method at issue in this case. Given his training and experience, Trooper McCord justifiably believed there was a very high likelihood that the modified battery in Ms. Ramirez's truck contained a hidden compartment.

The second factor of the test—the likelihood the secret compartment contains contraband—is typically not a concern because "[i]f the vehicle had a hidden compartment, it was highly likely to contain contraband." *See Stephenson*, 452 F.3d at 1177 (citing *Jurado-Vallejo*, 380 F.3d at 1238-39). The court finds that the analysis in *Stephenson* applies here because it is hard to conceive of a legitimate use of a hidden storage compartment in a truck battery.

With both factors of the test met, this court finds that Trooper McCord had probable cause to arrest Ms. Ramirez.

**IV. Waiver of *Miranda* Rights**

Upon arrest, a person must be advised of her Fifth Amendment rights before she is questioned. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Any waiver must be made voluntarily, knowingly, and intelligently. *Id.* at 444. The United States has the burden of proving by a preponderance that the defendant was advised of her rights and made a valid waiver. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). The waiver inquiry has two distinct dimensions: (1) waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). If the State establishes that a *Miranda* warning was given and the accused understood these rights and made an uncoerced statement, then a valid waiver was made. *See Burghuis v. Thompkins*, 130 S.Ct. 2250, 2261 (2010).

Language barriers are a factor to consider, because they may impair a suspect's ability to act knowingly and intelligently. *United States v. Castorena-Jaime*, 117 F.Supp.2d 1161, 1171 (D. Kan. 2000) (citations omitted). The court must consider what effort the officer made to communicate, whether the defendant responded that she understood his rights or ever indicated that she did not understand them, and what the defendant displayed in English language skills. *Id.*

In this case, the court finds that Ms. Ramirez sufficiently understood her rights and made

6

a voluntary, knowing and intelligent waiver of those rights. Trooper McCord properly gave her *Miranda* warnings in English, which she indicated she understood. Although Ms. Ramirez's first language may not be English, she communicated adequately with Trooper McCord in English throughout the initial traffic stop and subsequent arrest. The rental agreement Ms. Ramirez had signed for the truck was in English, which Trooper McCord noticed. She later spoke with Trooper Rule about performing a controlled drug buy, and this conversation also took place in English. In summary, other than having to repeat a few questions, neither of the officers involved ever received an indication from Ms. Ramirez that she was having a hard time understanding them. On the contrary, she answered their questions logically and stated that she did, in fact, understand her rights.

## V. Conclusion

Trooper McCord stopped Ms. Ramirez on suspicion of speeding after his instruments indicated she was driving five miles per hour over the speed limit. Therefore, the initial stop was justified. With Ms. Ramirez's permission, Trooper McCord searched the truck and found tampering with the new truck's battery casing that indicated the presence of a hidden compartment used for illegal drug transportation. Give his experience and training, Trooper McCord's discovery gave him probable cause to arrest Ms. Ramirez. Finally, Trooper McCord gave *Miranda* warnings to Ms. Ramirez in English, who said she understood her rights and continued to speak with him. In the absence of any indication that Ms. Ramirez did not sufficiently understand her rights, this constituted a valid waiver.

IT IS ACCORDINGLY ORDERED this 2nd day of October that Bernice Esparra Ramirez's Motion to Suppress (Dkt. No. 18) is denied.

s/J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE